# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW POLITI, on behalf of himself and those similarly situated,<br><br>      Plaintiff,<br><br>    v.<br><br>BOSCOV'S, INC., *et al.*,<br><br>      Defendants. | Case No. 22–cv–01616–MCA–ESK<br><br>**REPORT AND RECOMMENDATION** |

**KIEL**, **U.S.M.J.**

    **THIS MATTER** is before the Court on plaintiff's motion (Motion) to remand this action to the Superior Court of New Jersey (State Court). (ECF No. 9.) Plaintiff argues that defendants'[1] removal was contrary to the $5 million amount-in-controversy threshold required to confer jurisdiction under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §1332(d). (*Id.*) Defendants filed an opposition to the Motion (ECF No. 13), to which plaintiff filed a reply (ECF No. 14). I heard oral argument on August 5, 2022 (ECF No. 27) and pursuant to the order entered thereafter (ECF No. 25), defendants filed a supplemental declaration in support of the Motion (ECF No. 29). Plaintiff filed a response to defendants' supplemental declaration. (ECF No. 30.) For the following reasons, I recommend that the Motion be **DENIED.**

---

[1] Plaintiff names as defendants Boscov's, Inc., Boscov's Department Store, LLC (BDSLLC), and Jim Boscov. (ECF No. 1-1 ¶¶11–20.) Boscov's, Inc. is the managing member and owner of BDSLLC. (*Id.* ¶15.) "Jim Boscov is the Chairman, Chief Executive Officer, and a principal of Boscov's, Inc. and/or [BDSLLC]." (*Id.* ¶17.)

## FACTUAL BACKGROUND[2]

On May 29, 2021, plaintiff visited defendants' store in Woodbridge, New Jersey and placed a $1,854.19 order for the purchase and delivery of a reclining sectional sofa. (ECF No. 1-1 ¶¶ 31, 32.) Defendants advised plaintiff that since the sofa was on backorder, it would be delivered sometime in September 2021. (*Id.* ¶ 33.) Defendants provided plaintiff with a document titled "Delivery Guidelines" and a receipt that stated the delivery "E.T.A. [as] SEPT FIRST WEEK." (*Id.* ¶¶ 34, 35.)

On September 9, 2021, defendants delivered the sofa. (*Id.* ¶ 37.) However, "a portion of the sofa was damaged as the recliner on one side did not work." (*Id.* ¶ 38.) Plaintiff was neither provided oral or written notice about his rights under the Delivery of Household Furniture and Furnishings regulations, N.J.A.C. § 13:45A-5.1, *et seq.* (Furniture Delivery Regulations), nor whether "he could cancel [his order] for a full refund, or accept a later delivery" (collectively, Rights). (*Id.* ¶ 42.) Rather, the delivery personnel gave plaintiff the choice to have the damaged portion either: (1) fixed; or (2) returned and replaced. (*Id.* ¶ 39.) Plaintiff chose the second option and the replacement was scheduled to be delivered on September 17, 2021. (*Id.* ¶ 40, 43.) The replacement was, however, not delivered on that date. (*Id.* ¶ 45.) On and "[a]fter September 17, 2021, [p]laintiff called [defendants] multiple times about the delivery, but it was not until September 21, 2021 that [defendants] called to [re]schedule [the] delivery for … September 23, 2021." (*Id.* ¶¶ 46, 50.) On September 23, 2021, defendants called plaintiff to inform him that delivery would instead be made on September 28, 2021. (*Id.* ¶ 51.) At no point during these calls was plaintiff advised of his Rights. (*Id.* ¶¶ 52, 53.)

---

[2] In deciding a motion to remand, a court "focus[es] on the plaintiff's complaint at the time the petition for removal was filed," and "must assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

The replacement was delivered on September 30, 2021, but the recliner was still not working. (*Id.* ¶¶ 54, 55.) Upon plaintiff's request, defendants delivered a second replacement on October 5, 2021. (*Id.* ¶¶ 56, 57.) Plaintiff was again not advised of his Rights, but since defendants were able to fix the first replacement, plaintiff kept that one and returned the second replacement. (*Id.* ¶¶ 56, 59, 60.)

## PROCEDURAL HISTORY

On February 15, 2022, plaintiff filed this action in State Court on behalf of a putative class consisting of "all New Jersey … [residents] … who at any time on or after six years prior to the date [of] th[e] [c]omplaint … ordered furniture or furnishings for future delivery from [defendants] to an address in New Jersey." (*Id.* ¶ 77.) Given defendants' failure under the Furniture Delivery Regulations to provide plaintiff with written notice as to the specific date or length of delivery and of his right to cancel his order for a full refund, plaintiff seeks to recover damages under the New Jersey Consumer Fraud Act (NJCFA) and the Truth-in-Consumer Contract, Warranty, and Notice Act (TCCWNA). (*Id.* pp. 15–22.) Plaintiff also seeks entry of a declaratory judgment against defendants pursuant to the Uniform Declaratory Judgment Act. (*Id.* pp. 21–23.)

On March 22, 2022, defendants removed this action by invoking subject-matter jurisdiction pursuant to CAFA.[3] (ECF No. 1 ¶¶ 22–38.) In doing so, defendants confirmed that because plaintiff is a citizen of New Jersey and they are citizens of Pennsylvania,[4] minimal diversity exists. (*Id.* ¶¶ 24, 25, 31.)

---

[3] Plaintiff served Boscov's, Inc. and BDSLLC on February 21, 2022. (ECF No. 1 ¶ 14; ECF No. 1-2 pp. 3, 4.) Although Jim Boscov has yet to be served, he consents and joins in the notice of removal. (ECF No. 1 ¶¶ 16, 17; ECF No. 1-3.) Since the notice of removal was filed within 30 days of the date on which Boscov's Inc. and BDSLLC were served, the removal is timely. *See* 28 U.S.C. § 1446(b).

[4] While the complaint asserts the citizenship of plaintiff, Boscov's, Inc., and BDSLLC, it does not assert the citizenship of Jim Boscov. (*See* ECF No. 1-1 ¶¶ 11–18.)

Defendants filed a declaration from Boscov's, Inc.'s Executive Vice President, Russell Diehm, who determined that since 2016, defendants have "completed 56,854 deliveries to addresses in New Jersey." (ECF No. 1-4 ¶ 5.) Diehm's supplemental declaration further asserts that Boscov's, Inc.'s records show that 45,694 of those 56,854 furniture deliveries were "purchased by individuals with first and last names" — *i.e.*, "individual consumers." (ECF No. 29 pp. 1, 5.) The net sale from the 45,694 deliveries was $34,011,450.11. (*Id.* p. 5.) Based upon the value of plaintiff's transaction and the minimum statutory award to each class member, defendants assert that "because the class would contain at least 100 members, the amount-in-controversy [is] computed to exceed $5 [million] in class[-]wide damages." (ECF No. 1 ¶¶ 36–38.)

Plaintiff now moves for remand solely on the basis that defendants have not demonstrated CAFA's amount-in-controversy threshold. (ECF No. 9.)[5]

## LEGAL STANDARD

A defendant may remove any civil action to a federal district court having original jurisdiction over the action. 28 U.S.C. § 1441(a). CAFA provides federal courts with original jurisdiction over civil class actions if the removing party establishes that the: (1) parties are minimally diverse; (2) proposed class has more than 100 members; and (3) "matter in controversy exceeds the sum or value of $5 [million] exclusive of interest and costs." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting 28 U.S.C. § 1332(d)(2), (d)(6)). "To determine whether the[se] … jurisdictional requirements are

---

Defendants, however, provide in the notice of removal that "[a]t the time of filing of the [c]omplaint, Jim Boscov was a citizen of … Pennsylvania." (ECF No. 1 ¶ 25.)

[5] After plaintiff filed the Motion, defendants filed a motion to dismiss. (ECF No. 10.) Pending resolution of the Motion, the motion to dismiss was administratively terminated without prejudice. (ECF No. 18.)

4

satisfied, a court evaluates allegations in the complaint and … [the] notice of removal." *Id.*

While removal statutes are generally strictly construed, with any doubt to be resolved in favor of remand, *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), "no antiremoval presumption attends [CAFA] cases." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Instead, CAFA "should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed." *Id.* (quoting S. Rep. No. 109-14, p. 43 (2005)). However, in response to a motion to remand, the removing party has the burden of showing that CAFA's requirements have been met by a "preponderance of the evidence." *Id.* at 81; *La Stella v. Aquion, Inc.*, No. 19-10082, 2020 WL 7694009, at *5 (D.N.J. Dec. 28, 2020) (concluding that "the preponderance of the evidence standard applies whenever a plaintiff disputes jurisdiction").

## **DISCUSSION AND ANALYSIS**

Plaintiff does not dispute that CAFA's diversity and class size requirements are met. (ECF No. 9-1 pp. 12, 13.) Rather, plaintiff seeks remand only on the basis of defendants' alleged failure to establish that the amount-in-controversy exceeds $5 million. (*Id.*) Plaintiff argues that defendants' calculation as to the amount-in-controversy is based "on speculative numbers of the damages incurred by the class members." (*Id.* 9-1 p. 13.) Given that "[d]efendants' underlying assumptions are based on the incorrect and highly speculative notion that all of the class members have viable claims, all suffered an ascertainable loss[,] and all suffered harm," plaintiff asserts that defendants have not met their burden by a preponderance of the evidence. (*Id.* p. 16.)

In contrast, defendants argue that their calculation is based on plaintiff's broad definition of the class and Diehm's sworn declarations. (ECF No. 13 p. 22; ECF No. 29 p. 2.) Since the claims of the class equal the deliveries that occurred

six year prior to the date that the complaint was filed, defendants assert that they have satisfied their burden. (*Id.*)

## I. AMOUNT-IN-CONTROVERSY

To determine whether the amount-in-controversy exceeds the $5 million jurisdictional threshold, "courts must aggregate 'the claims of the individual class members.'" *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F.Supp.3d 536, 540 (D.N.J. 2020) (quoting 28 U.S.C. §1332(d)(6)). In other words, a court is "to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Id.* (alteration in original) (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). This calculation involves considering the parties' proofs and "examining both 'the dollar figure offered by the plaintiff and the plaintiff's 'actual legal claims.'" *Id.* at 541 (quoting *Morgan v. Gay*, 471 F.3d 469, 474-75 (3d Cir. 2006)). "Generally, a defendant's plausible allegations regarding the amount[-]in[-]controversy will suffice, but if the plaintiff contests or the court questions those allegations, 'evidence establishing the amount is required by [28 U.S.C.] §1446(c)(2)(B).'" *Leff v. Belfor USA Grp., Inc.*, No. 15-02275, 2015 WL 3486883, at *2 (D.N.J. June 2, 2015) (quoting *Dart Cherokee*, 574 U.S. 88).

When a plaintiff asserts a claim pursuant to a state statute, the potential recovery of attorneys' fees and treble damages must be considered in determining the amount-in-controversy if they are available under that statute. *See Judon*, 773 F.3d at 508 n.12 (holding that treble damages must be considered in arriving at the amount-in-controversy); *see also Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 227 (3d Cir. 2019) (holding that "attorneys' fees … do count for CAFA's amount-in-controversy threshold"). A determination as to the amount-in-controversy "focu[ses] on what damages a plaintiff could reasonably assert," and "not the

6

amount ultimately proven." *Smith v. HSN, Inc.*, No. 20-12869, 2020 WL 7022640, at *5 (D.N.J. Nov. 30, 2020).

In accordance with New Jersey civil practice, plaintiff does not state in the complaint the amount of damages sought. *See* N.J.Ct.R. 4:5-2 ("If unliquidated money damages are claimed in any court … the pleading shall demand damages generally without specifying the amount."). Instead, plaintiff's prayer for relief describes the damages sought by category — *i.e.*, "injunctive relief[,] … award of actual and treble damages[,] … statutory civil penalty[,] … attorneys' fees and costs." (ECF No. 1-1 p.18.) Because of the manner in which plaintiff states his claims for damages, state law must be applied to convert the categories to monetary sums. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004).

### A. NJCFA

To state a claim under the NJCFA, a plaintiff "must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Smajlaj v. Campbell Soup Co.*, 782 F.Supp.2d 84, 97 (D.N.J. 2011). While the term ascertainable loss is incapable of "precise meaning," it has been defined by the New Jersey Supreme Court as "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable." *Smith*, 2020 WL 7022640, at *4 (first quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005)) (second quoting *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018)). A prevailing plaintiff under the NJCFA is entitled to recover an award of: (1) "threefold the damages"; and (2) "reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:8-19. Such an award is not a matter of discretion; it is mandatory. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 198 n.71 (3d Cir. 2016) (holding that "[t]he [NJCFA] *mandates* that successful plaintiffs receive treble damages and attorneys' fees and costs").

7

Plaintiff's NJCFA claim relies on the theory that defendants violated the Furniture Delivery Regulations by failing to provide him with notice of his Rights and "deter[ring] him from cancelling [his] order and obtaining a full refund." (ECF No. 1-1 ¶¶ 103–107.)  Plaintiff argues that he "suffered an ascertainable loss in the total amount he paid for the [sofa] and delivery" and, thus, has "standing to represent a class of other consumers who were subjected to the same alleged [NJ]CFA violation, even though ascertainable loss cannot be readily determined as to those other consumers."  (Id. ¶¶ 106, 108.)

Because plaintiff paid $1,854.19 for the sofa and delivery, he would be entitled to $5,562.57 if he were to succeed on his claims and his damages were trebled.  (Id. ¶ 32; ECF No. 1 ¶ 35.)  Hence, defendants argue that "[e]ven if only a small fraction of the … number of transactions … are valued near [plaintiff's treble damages] … the class would need 899 members to exceed the $5 [million] threshold."  (ECF No. 13 pp. 21, 22 (quoting ECF No. 1 ¶ 36).)  Plaintiff, however, takes issue with defendants "merely offer[ing] conclusory statements concerning the amount of … transactions and cho[o]s[ing] theoretical numbers that would allow them to meet the amount[-]in[-]controversy requirement." (ECF No. 9-1 p. 16.)

I disagree with plaintiff and find that defendants have done more than just issue "conclusory statements concerning the amount" that is potentially involved for claims of the putative class.  Defendants have reviewed their records and estimate that the putative class will involve 56,854 transactions, of which at least 45,694 transactions are for deliveries to individual consumers in New Jersey. (ECF No. 29 p. 5.)

In this action, plaintiff alleges that defendants' documents for the sale and delivery of furniture violate the Furniture Delivery Regulations in a number of respects.  (ECF No. 1-1 ¶¶ 61–74.)  Plaintiff also alleges that "defendants have used and continue to use the[se] same form[s] … for several years in thousands of transactions with [their] customers … in New Jersey."  (Id. ¶ 75.)  Thus,

8

plaintiff, as the master of his complaint, seeks relief on behalf of a putative class consisting of *all* individuals who: (a) "ordered furniture or furnishings … from [defendants]"; (b) "to an address in New Jersey"; (c) "six years prior to the … fil[ing]" of the complaint. Plaintiff asserts his "claims are typical … of the members of the [c]lass because all such claims arise out of the sale of household furniture or furnishings for future delivery using form documents and practices the same as or similar to those used in the transaction with [p]laintiff." (*Id.* ¶ 80.)

The relevant transactions for the putative class is not limited to those involving the same sales documents or treatment that plaintiff received, but rather include *all* transactions six years prior to the filing of plaintiff's complaint that involve the sale of household furniture to an individual in New Jersey. Based on defendants' search of their records, the number of transactions that are potentially part of the putative class is at least 45,694. On behalf of that expansive putative class, plaintiff seeks "declaratory relief pursuant to New Jersey Court Rule 4:32-1(b)(2)" for defendants' "fail[ure] to provide the required written notices to [p]laintiff advising him of his rights." (*Id.* ¶¶ 103–109, p. 24,)

"Where the plaintiff … seeks injunctive or declaratory relief, the amount[-]in[-]controversy is often not readily determinable. Under those circumstances, the amount[-]in[-]controversy is determined by 'the value of the object of the litigation.'" *Columbia Gas Trans. Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995). Here, plaintiff seeks to limit the potential value of the object of the litigation by arguing that the complaint does not "rel[y] on the assumption that the class members have viable claims under the [NJ]CFA and TCCWNA." (ECF No. 14 p.7.) This is incorrect.[6] A fair reading of the complaint indicates that

---

[6] Plaintiff argues that since "the [c]omplaint limits the class relief to only notice of potential claims against [d]efendants" (ECF No. 14 p.6), the viability of each class member's NJCFA claim is unknown at this stage. However, whether each class member suffered an "ascertainable loss" under the NJCFA is an inquiry to be decided on a motion for class certification — not a motion for remand. *See e.g., McNair v. Synapse*

9

plaintiff is seeking "[a] declaratory judgment that [d]efendants violated the Furniture Delivery Regulations, [NJ]CFA[,] and TCCWNA" on behalf of *all* putative class members. (*Id.* p. 24.) Plaintiff also seeks for the putative class to receive notice of their continuing right to: (a) "cancel their orders and receive a full refund if [d]efendants failed to deliver all items ordered by the promised delivery date, made a partial delivery, delivered nonconforming furniture, and/or delivered damaged furniture"; and (b) "petition the court to terminate their contracts due to violations contained" therein, "[r]egardless of whether or not they were harmed." (*Id.*¶¶ 123, 124.)

An "object[ive] of th[is] litigation" is a judicial determination that "members of the putative [c]lass[] are entitled to … terminate their contracts with [d]efendants" for defendants' violation of the NJCFA. (ECF No 1-1 ¶ 79.) Per plaintiff's complaint, every one of those 45,694 transactions are subject to termination because the sales forms used by defendants violated the Furniture Delivery Regulations. (*See Id.*) Accordingly, the transactions for which the putative class members would potentially be entitled to terminate amount to $34,011,450.11 (ECF No. 29 pp. 5), which far exceeds the $5 million threshold.

### B. TCCWNA

To state a TCCWNA claim, a plaintiff must prove that: (1) "the defendant was a 'seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid'"; (2) "the defendant offered or entered into a 'written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign'"; (3) "at the time that the written consumer contract is signed or the written consumer warranty,

---

*Grp., Inc.*, No. 06-05072, 2010 WL 4777483, at *5–7 (D.N.J. Nov. 15, 2010) (determining whether certification of the class's NJCFA claim is warranted; *Bovgirya v. Am. Honda Motor Co., Inc.*, No. 17-06248, 2018 WL 3954855, at *3–6 (D.N.J. Aug. 16, 2018) (analyzing whether the defendants satisfied the amount-in-controversy as to the plaintiff's class claim for notice relief without first considering if the class suffered a harm).

notice, or sign is displayed, that writing contains a provision that 'violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee' as established by State or Federal law"; and (4) "the plaintiff is an 'aggrieved consumer.'" *Truglio v. Planet Fitness, Inc.*, 360 F.Supp.3d 274, 277 (D.N.J. 2018) (alterations in original) (quoting *Spade v. Select Comfort Corp.*, 232 N.J. 504, 516 (2018)). All TCCWNA claims are valued at no less than $100 per violation, regardless of the form of relief that a plaintiff seeks. N.J.S.A. 56:12-17.

Because the potential value of the declaratory judgment relating to the NJCFA claim is in excess of the $5 million threshold, a detailed analysis of the value of the TCCWNA claim is not necessary. However, based upon Diehm's supplemental declaration, the putative class consists of at least 45,694 transactions. (ECF No. 29 pp.1, 5.) That number multiplied by $100 would yield $4,569,400 — the minimum potential benefit to the putative class for the TCCWNA claim assuming there is a judicial determination that defendants' sales documents violated the Furniture Delivery Regulations

The minimum yield is about $440,000 shy of the $5 million mark. I conclude, however, that if reasonable legal fees are added, the total value of the TCCWNA claim will be in excess of $5 million. *See Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (holding that attorneys' "fees could be as much as [30] percent" for all class actions); *Kendall v. CubeSmart L.P.*, No. 15–06098, 2015 WL 7306679, at *5 (D.N.J. Nov. 19, 2015) (noting that courts within the District of New Jersey "utilize[] the median attorneys' fee award of 30 [percent] when determining the amount[-]in[-]controversy" in CAFA cases).

Defendants, moreover, assert that their business model is "not designed to sell furniture to businesses." (ECF No. 29 p.2.) Accordingly, at this stage of the litigation, defendants have shown by a preponderance of the evidence that "the vast majority of the remaining 11,160 deliveries, which could not be identified by a purchaser with a first and last name, were [likely] made by and

11

delivered to an individual consumer." (ECF No. 29 p.2.) Assuming that 50 percent of those 11,160 transactions are to consumers, the number of transactions for which plaintiff seeks declaratory judgment relief under TWWCNA would be over 50,000. Thus, defendants have met their burden to show by a preponderance of the evidence that the $5 million threshold has been met.

## II. ATTORNEYS' FEES

Pursuant to 28 U.S.C. §1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney[s'] fees, incurred as a result of the removal." A court will award costs and fees to the party seeking remand "where the complaint clearly does not state a claim removable to federal court or where minimal research would have revealed the impropriety of removal." *Gloucester Cnty. Improvement Auth. v. Gallenthin Realty Dev., Inc.*, No. 07-05328, 2008 WL 336784 (D.N.J. Feb 5, 2008) (quoting *Newton v. Tavani,* 962 F.Supp. 45, 48 (D.N.J. 1997)).

Because I recommend the Motion be denied, plaintiff's request for an award of attorneys' fees and costs (ECF No. 9-1 pp. 27–29) is inapplicable.

## RECOMMENDATION AND ORDER

For the reasons stated above, it is:

1. **RECOMMENDED** that the Motion be **DENIED.**

2. **ORDERED** that the Clerk of the Court administratively terminate the Motion at **ECF No. 9** pending the review of this report and recommendation.

3. **ORDERED** that the Clerk of the Court activate this report and recommendation to indicate that it requires further action by the District Judge.

4.  **ORDERED** that the parties have **14 days** to file any objections to this report and recommendation pursuant to Local Civil Rule 72.1(c)(2).

> _/s/ Edward S. Kiel_
> **EDWARD S. KIEL**
> **UNITED STATES MAGISTRATE JUDGE**

Date:    October 17, 2022