## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANDREW POLITI, on behalf of himself
those similarly situated,

                Plaintiff,

    v.

BOSCOV'S INC., and BOSCOV's
DEPARTMENT STORE, LLC,

                Defendants.

Case No. 2:22-cv-1616-MCA-SDA

**OPINION GRANTING
PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

December 5, 2025

**STACEY D. ADAMS, United States Magistrate Judge**

This matter comes before the Court on a Motion for Preliminary Approval of a Class Action Settlement filed by lead plaintiff Andrew Politi ("Plaintiff") filed on July 15, 2025 (the "Motion"). (ECF No. 71). Defendants Boscov's, Inc. and Boscov's Department Store, LLC (together, "Defendants" or "Boscov's") do not oppose the Motion. For the reasons stated herein, the Motion is **GRANTED**.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Boscov's is a retailer of household furniture and furnishings.[1] (Compl. ¶ 27). On May 29, 2021, Plaintiff visited Boscov's in Woodbridge, New Jersey and placed a $1,854.19 order for the purchase and delivery of a reclining sectional sofa. (*Id.* ¶¶ 31, 32). At the time of purchase, Boscov's told Plaintiff that the sofa was on backorder and would be delivered sometime in September 2021. (*Id.* ¶ 33). Boscov's also provided Plaintiff with a document titled "Delivery

---

[1] The Court gleans the following facts from the Complaint ("Compl.") filed with the Notice of Removal (ECF No. 1).

Guidelines" and a receipt that stated the delivery would be "E.T.A. SEPT FIRST WEEK." (*Id.* ¶¶ 34, 35).

On September 9, 2021, Boscov's delivered the sofa. (*Id.* ¶ 37). Plaintiff alleges that at the time of delivery, a portion of the sofa was damaged as the recliner on one side did not work. (*Id.* ¶ 38). Plaintiff claims that he was neither (i) provided oral or written notice about his rights under the Delivery of Household Furniture and Furnishings regulations, N.J.A.C. 13:45A-5.1, *et seq.* ("Furniture Delivery Regulations") and Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 *et seq.*; nor (ii) informed whether he could cancel his order for a full refund or accept a later delivery. (*Id.* ¶¶ 1, 42). The delivery personnel gave Plaintiff the choice to have the damaged portion either: (i) fixed; or (ii) returned and replaced. (*Id.* ¶ 39). Plaintiff chose to have Boscov's deliver a replacement sofa piece, which was scheduled to be delivered on September 17, 2021. (*Id.* ¶¶ 40, 43).

The replacement was not delivered on the promised date. (*Id.* ¶ 45). On and after September 17, 2021, Plaintiff called Boscov's multiple times about the delivery, and on September 21, 2021, Boscov's called to schedule a delivery for September 23, 2021. (*Id.* ¶¶ 46-50). On September 23, 2021, Boscov's called Plaintiff and informed him that the delivery would instead be made on September 28, 2021. (*Id.* ¶ 51). Plaintiff claims that at no point during these calls was he advised of his rights under the Furniture Delivery Regulations. (*Id.* ¶¶ 52, 53). The replacement was finally delivered on September 30, 2021, but the recliner was still not working. (*Id.* ¶¶ 54, 55). Upon Plaintiff's request, Boscov's delivered a second replacement on October 5, 2021. (*Id.* ¶¶ 56, 57). Ultimately, Boscov's was able to fix the first replacement, so Plaintiff returned the second replacement. (*Id.* ¶ 59). Plaintiff claims that again at no time throughout this process was he advised of his rights under the Furniture Delivery Regulations. (*Id.* ¶ 60).

2

On February 15, 2022, Plaintiff filed a class action Complaint against Defendants Boscov's, Inc., Boscov's Department Store, LLC, and Jim Boscov in the Superior Court of New Jersey, Middlesex County, Law Division under docket number MID-L-000805-22. (ECF No. 1). On March 22, 2022, Defendants filed a Notice of Removal alleging diversity jurisdiction under the Class Action Fairness Act ("CAFA"). (*Id*.). On April 11, 2022, Plaintiff filed a Motion to Remand. (ECF No. 9). Defendants opposed, and on October 17, 2022, Magistrate Judge Kiel issued a Report and Recommendation that the Motion be denied. (ECF No. 32). Plaintiff objected to the report pursuant to Fed. R. Civ. P. 72(b)(2), Defendants opposed, and on August 22, 2023, District Judge Arleo adopted the Report and Recommendation in part. (ECF No. 39). On December 21, 2022, Defendants filed their Answer to the Complaint. (ECF No. 38). On September 15, 2023, Defendants filed a Motion for Judgment on the Pleadings. (ECF No. 45). Plaintiff opposed, and on May 16, 2024, District Judge Arleo granted in part and denied in part Defendants' motion, dismissing Jim Boscov as a Defendant and dismissing Plaintiff's claims under the New Jersey Consumer Fraud Act, N.J.S.A 56:8-1, *et seq*. (ECF No. 61).

Following the Court's decision, the parties then engaged in approximately eight months of arm's length settlement negotiations before reaching a settlement in principle on January 27, 2025 (*See* ECF No. 71-2, "Merino Decl." ¶ 5). The settlement in principle provided the parties would negotiate attorneys' fees only after executing a long form settlement agreement and agreeing on the form of notice to be issued to the class. (*Id.* ¶ 6). Over the following months, the parties negotiated the long form settlement agreement and the form of class notice, and by May 14, 2025, the parties had executed the class action settlement agreement. (*Id.* ¶ 7, Exs. A and B).

The parties did not begin negotiating Plaintiff's attorneys' fees until after the execution of the long form settlement agreement. (*Id.* ¶ 8). Following the agreement on attorneys' fees, the

parties amended the settlement agreement to include Plaintiff's attorneys' fees. (*Id.*, Ex. C). Plaintiff filed this motion for preliminary approval of the class action settlement on July 15, 2025. (ECF No. 71). On September 10, 2025, the Court held oral argument. (ECF No. 75).

## THE PROPOSED SETTLEMENT

**The Proposed Settlement Class**

The Settlement Class is defined as "[t]he only or first named purchaser in the 1,379 transactions identified by Defendant who purchased household furniture for future delivery to an address in New Jersey from November 14, 2015 through February 11, 2022 where the furniture delivery date was changed at no fault of the consumer."[2] (ECF No. 71-3 Ex. A ("Settlement Agreement") ¶ 1).

**The Settlement**

The settlement provides that, no later than seven days after the day on which the Final Approval Order is filed (the "Effective Date"), the settlement administrator agreed to by Defendant and Plaintiff, subject to Court approval, (the "Settlement Administrator") shall create a bank account ("Settlement Fund") from which the settlement funds will be administrated. (*Id.* ¶¶ 4, 7). Within fourteen days of the Settlement Fund's establishment, Defendants shall fund the Settlement Fund with the entirety of the recovery of approximately $137,900. (*Id.* ¶ 6). To resolve the claims, Defendants agree to send each Settlement Class Member a settlement check in the amount of $100, less the prorated cost of settlement administration rounded down to the nearest whole cent. (*Id.* ¶ 7). Each member will receive approximately $90.94 in cash relief. (Merino Decl. ¶ 10). The

---

[2] The Settlement Class specifically excludes (i) any judges presiding over the litigation and (ii) limits the Settlement Class "[w]here two or more people were listed as purchasers in a given transaction, they shall be collectively referred to in the singular as one Settlement Class member, as they will be entitled to receive only one class award, payable to the first named purchaser as set forth further herein."

settlement checks shall be mailed to Settlement Class members no later than thirty (30) days after the Effective Date. (Merino Decl., Ex. A "Settlement Agreement" ¶ 8).

The settlement further provides that Plaintiff shall receive a payment in the amount of $12,500 for his individual damages alleged in the complaint and as a service award in recognition of his efforts on behalf of the settlement class. (*Id.* ¶ 10). The parties have selected Class Experts Group, LLC ("CEG") to serve as the Settlement Administrator. (*Id.* ¶ 11). CEG has agreed to accept $7,500 as a flat fee to administer this settlement, which will be paid from the Settlement Fund after it is fully funded. (*Id.*).

Subject to Court approval, Class Counsel will seek payment of Attorneys' Fees and costs in the amount of $170,000, which includes all attorneys' fees for time already spent and time to be spent moving forward and all the costs and expenses incurred in the matter. (Merino Decl., Ex. C (("Amendment to the Settlement Agreement") ¶ 1). Counsel fees shall not reduce the benefit to the settlement class. (Merino Decl. ¶ 9).

The Settlement Agreement provides that, if any settlement check is not deliverable or not cashed, then a *cy pres* award in the amount of the balance in the Settlement Fund shall be paid to Legal Services of New Jersey ("LSNJ"). with the funds to be used for any purpose including LSNJ's Poverty Research Institute and the Free Statewide Hotline, except that no portion of the funds may be used for consumer litigation. (Settlement Agreement ¶ 8).

## GOVERNING LAW AND ANALYSIS

### I. Preliminary Approval of Class Action Settlement

Approval of a class action settlement is a two-step process: (1) preliminary approval; and (2) a subsequent final fairness hearing. *Easterday v. USPack Logistics LLC*, No. 15-cv-7559 (RBK) (AMD), 2023 WL 4398491, at *5 (D.N.J. July 6, 2023) (internal citations omitted). At the

preliminary approval stage, the parties submit the proposed settlement to the Court for a fairness evaluation. *Id.* If the proposed settlement is preliminarily acceptable, the Court directs the notice to be provided to all class members who would be bound by the settlement to provide them with an opportunity to be heard on, object to, and/or opt out of the settlement. *Id.* (citing Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Zimmerman v. Zwicker & Assocs., P.C.*, No. 09-cv-3905 (RMB) (JS), 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011). At this stage, "the court must determine whether the proposed settlement falls 'within the range of fairness, reasonableness and adequacy' required by Rule 23(e)." *Easterday*, 2023 WL 4398491, at * 2 (quoting *In re Amino Acid Lysine Antitrust Litig.*, No. 95-cv-7679, 1996 WL 197671, at *4 (N.D. Ill. Apr. 22, 1996)).

A proposed settlement "falls within the range of possible approval so long as there is a conceivable basis for presuming that the standard applied for final approval – fairness, adequacy, and reasonableness – will be satisfied." *Id.* (citing *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quotations omitted)). Generally, preliminary approval should be granted "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives or segments of the class[.]" *Id.* (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). A settlement is presumed fair when it results from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). Preliminary approval is not simply a "rubber stamp" of the agreement. *In re Nat'l*

*Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001)).

### A.  <u>Requirements for Class Certification under Fed. R. Civ. P. 23</u>

The parties request that the class be certified for settlement purposes only. (*See* Settlement Agreement ¶ 1). The Third Circuit has observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995)) (alterations omitted). "The requirements of [Rule 23] (a) and (b) are designed to insure that a proposed class has 'sufficient unity so that absent class members can fairly be bound by decisions of class representatives.'" *In re Prudential Ins. Co.*, 148 F.3d 283, 309 (3d Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997)).

### 1.  Fed. R. Civ. P. 23(a) Requirements

The requirements of Rule 23(a) must be met whether certification is sought for the purpose of proceeding with litigation or, as here, for the purpose of proceeding toward settlement. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 379 (3d Cir. 2013). Class certification is appropriate where the prospective class establishes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); (4) and the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). All requirements of Fed. R. Civ. P. 23

must be proven by a preponderance of the evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

### i. Numerosity

Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, that will satisfy the numerosity requirement. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (quoting *Stewart v. Abraham*, 275 F. 3d 220, 226-27 (3d Cir. 2001)). Fed. R. Civ. P. 23(a) requires an examination of the specific facts in each case. *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). Here, there are approximately 1,379 class members. (Settlement Agreement ¶ 1). Therefore, the numerosity requirement is easily satisfied.

### ii. Commonality

Fed. R. Civ. P. 23(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and their claims must depend on a common contention of such a nature that it is capable of class-wide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Being capable of class-wide resolution "means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Here, commonality is easily satisfied, as all class members have suffered the same injury – Defendants sold household furniture or furnishings for future delivery to members of the class using documents and practices contrary to the Furniture Delivery Regulations.

### iii. Typicality

The typicality requirement "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir.

2001) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)). The typicality requirement "does not require that all putative class members share identical claims." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Instead, "so long as 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.'" *Id.* (internal citations omitted). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). The Third Circuit has set a "'low threshold' for typicality," and courts seek to "ensure[] the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Nat'l Football League*, 821 F.3d at 428 (quoting *Newton*, 259 F.3d at 182-83).

Here, Plaintiff's claims are typical of those of the Settlement Class because they arise out of the same alleged conduct by Defendants. Namely, Plaintiff alleges that the documents and practices used by Defendants with regard to the delivery of furniture are contrary to the Furniture Delivery Regulations because Defendants failed to provide, to the members of the Class, written notice of their right to cancel their orders with a prompt, full refund of any payments already made or to accept delivery at a specified later time if Defendants did not deliver all of the merchandise by the promised delivery date, made only a partial delivery of the merchandise ordered, and/or delivered damaged or nonconforming merchandise. Accordingly, the typicality requirement is met.

### iv.    Adequacy of Representation

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This fourth factor tests the qualifications of class counsel and representatives, and "aims to root out conflicts of interest within the class to ensure that all class members are fairly

represented in the negotiations." *In re Nat'l Football Players*, 821 F.3d at 428. Class representatives must represent a class "capably and diligently." *Id.* at 430. A "minimal degree of knowledge" about the litigation is adequate. *Id.* (internal citations omitted).

### a. Class Representatives

The Court must look toward the named plaintiffs to determine whether there is any conflict between their claims and those asserted on behalf of the class, and their ability and incentive to vigorously represent the interests of the class. *See Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F.App'x 94, 101 (3d Cir. 2013). Here, the Settlement Agreement proposes to name Andrew Politi as the class representative. Plaintiff was harmed in the same way as other class members when they purchased furniture for future delivery from Defendants, who used form documents and practices which Plaintiff alleges include provisions that are contrary to the Furniture Delivery Regulations. Plaintiff consulted counsel, collected documents for litigation, and reviewed the pleadings. There are no identifiable conflicts between the class representative's claims and those of the class at large, and Plaintiff has ably represented the class as evidenced by this settlement. Accordingly, the Court finds Andrew Politi adequate to serve as the class representative.

### b. Class Counsel

The adequacy of class counsel is evaluated under Fed. R. Civ. P. Rule 23(g), which sets forth factors including the work counsel has performed in identifying and investigating potential claims; counsel's experience handling class actions, complex litigation, and the types of claims asserted; counsel's knowledge of applicable law; and the resources that counsel will commit to representation. Fed. R. Civ. P. 23(g)(1)(A). Here, Plaintiff proposes The Dann Law Firm, PC ("Dann") serve as class counsel.

The Court finds Dann to be sufficient to serve as Class Counsel. With respect to the Fed. R. Civ. P. 23(g) factors, Dann performed significant work in identifying and investigations the claims, and vigorously prosecuted this action to obtain a favorable settlement for their client. It participated in substantial informal settlement discovery and confirmatory discovery and engaged in extensive motion practice including opposing a dispositive motion for judgment on the pleadings. Further, Dann is well-experienced and knowledgeable in the area of class action litigation. Andrew R. Wolf, Esq., lead attorney for Dann in this matter, has been certified as class counsel numerous times in this District. *See e.g. Mills v. Camping World RV Sales, et al.*, No. 3:18-cv-02283 (MAS) (TJB) (D.N.J. December 16, 2020) (ECF No. 54 ¶ 27) (entering an order appointing Andrew R. Wolf, Esq. as class counsel); *McMillin v. The Traf Group Inc.*, No. 3:18-cv-01734 (DEA) (D.N.J. July 13, 2020) (ECF No. 32 ¶ 30) (same); *Pierre-Charles v. Consumer Portfolio Services, Inc.*, No. 3:17-cv-10025 (DEA) (D.N.J. July 21, 2020) (ECF No. 71 ¶ 30) (same). Accordingly, the Court finds the Fed. R. Civ. P. 23(g) factors to be satisfied.

The Court must also weigh three criteria, whether class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the Defendant. *Beltran v. SOS Ltd.*, No. 21-cv-7454 (RBK) (EAP), 2023 WL 319895, at *11 (D.N.J. Jan. 3, 2023) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 801), *report & recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023). The Court has already found that Dann possessed adequate experience and vigorously prosecuted this action in its examination of the Fed. Civ. P. 26(g) factors above. Additionally, the Court finds that the settlement was negotiated at arm's length over many months. (Merino Decl. ¶ 5). Further, Class Counsel has committed, and will continue to commit, sufficient resources to representing the class. (*Id.* ¶¶ 19-21). Accordingly, the Court finds Dann more than adequate to serve as Class Counsel in this settlement.

### 2. Fed. R. Civ. P. 23(b) Requirements

The parties must also demonstrate the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)." *Beltran*, 2023 WL 319895, at *12 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 345). Here, Plaintiffs rely on Fed. R. Civ. P. 23(b)(2), which applies when "questions of law or fact common to class members predominate over any questions affecting only individual members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

### i. Predominance

The predominance inquiry tests "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). "Predominance probes whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *McGowan v. CFG Health Network, LLC*, No. 22-cv-2770 (ZNQ) (RLS), 2024 WL 1340329, at *16 (D.N.J. Mar. 28, 2024) (internal citations omitted). "The focus of the predominance inquiry is on liability, not damages." *Smith v. Suprema Specialties, Inc.*, No. 02-cv-168 (WHW), 2007 WL 1217980, at *9 (D.N.J. Apr. 23, 2007*)*. Here, this requirement is easily satisfied as all class members were harmed by the same alleged conduct by Defendants – they were sold household furniture or furnishings for future delivery using documents and practices contrary to the Furniture Delivery Regulations. Liability is premised upon the same theory – that Defendants failed to provide, to the members of the class, the written notices of their right to cancel their orders with a prompt, full refund of any payments already made or to accept delivery at a specified later time when Defendants did not deliver all of the merchandise ordered by the promised or agreed upon delivery date, made only a

partial delivery of the merchandise ordered, and/or delivered damaged or nonconforming merchandise. Thus, the predominance requirement is satisfied.

### ii.    Superiority

"The superiority requirement asks a district court 'to balance, in terms of fairness and efficiency, the merits of a class action against those of "alternative available methods of adjudication."'" *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 309 (3d Cir. 2005) (citing *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996), *aff'd*, 521 U.S. 591, 138 (1997)). Pertinent matters in this inquiry include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]
>
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Here, a class action is a superior method to adjudicate these claims because each individual claim has a relatively low monetary value and there are over one thousand settlement class members. When, as here, the certification is for the purpose of settlement, a showing of manageability for trial is not required, and ascertainability looks to whether the class is defined by objective criteria and there is a reliable and feasible method of determining whether class members fall within that definition. *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 347 (D.N.J. 2020). The class in the instant action is clearly defined by objective criteria because the members all suffered the same injury – Defendants sold household furniture or furnishings for future

delivery to members of the class using documents and practices contrary to the Furniture Delivery Regulations. Class members might not be inclined to pursue their claims individually given the relatively small dollar value and the cost of litigation on an individual basis would likely exceed the value of any one claim. Moreover, given the nature of the claims it is likely that many class members were unaware that they had claims against Defendants, unless they happened to consult with counsel experienced in New Jersey consumer-protection law. A class action therefore provides a superior means of obtaining a more efficient recovery for more class members. The Court is satisfied that a class action is the superior method of adjudication in this case.

**B. Whether the Settlement is Fair, Reasonable, and Adequate under Fed. R. Civ. P. 23(e)**

The Court may only approve the settlement after a hearing and only upon a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). This includes consideration of whether: the class representatives and class counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate; and the proposal treats class members equitably relative to each other. *Id.* In determining whether the relief is adequate, the Court must take into account: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3). *Id.* In this Circuit, settlements, particularly in the context of large class actions, are favored. *See, e.g.*, *Erheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing that:

> The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings . . . Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation

14

faced by the federal courts [and] the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial).

In assessing the reasonableness of the settlement, the Court must be mindful that "[s]ettlements . . . reflect[] negotiated compromises. The role of a district court is not to determine whether the settlement is the fairest possible resolution [but only whether] the compromises reflected in the settlement . . . are fair, reasonable and adequate when considered from the perspective of the class as a whole." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013) (citation omitted); *see also Skeen v. BMW of N. Am., LLC*, No. 13-cv-1531 (WHW) (CLW), 2016 WL 4033969, at *7 (D.N.J. July 26, 2016). "While the issue of final settlement approval is not presently before the Court, it is important to consider the final approval factors during this stage so as to identify any potential issues that could impede the offer's completion." *Singleton v. First Student Mgmt. LLC*, No. 13-cv-1744 (JEI) (JS), 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014).

To review the settlement, courts in this Circuit analyze the settlement using nine factors from *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), as well as the permissive and non-exhaustive factors from *In re Prudential Ins. Co.*, 148 F.3d at 323. The *Girsh* factors include:

(1)    the complexity, expense and likely duration of the litigation;
(2)    the reaction of the class to the settlement;
(3)    the stage of the proceedings and the amount of discovery completed;
(4)    the risks of establishing liability;
(5)    the risks of establishing damages;
(6)    the risks of maintaining the class action through the trial;
(7)    the ability of the defendants to withstand a greater judgment;
(8)    the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
(9)    the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157. It is the settling parties' burden to demonstrate that the *Girsh* factors weigh in favor of approving the settlement. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (citations omitted). The Court will address each *Girsh* factor below.

### 1. The Complexity, Expense, and Likely Duration of Litigation (Factor #1)

The first *Girsh* factor, the complexity, expense, and likely duration of litigation, favors approval. This factor considers "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)). "Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *Yedlowski v. Roka Bioscience, Inc.*, No. 14-cv-8020 (FLW) (TJB), 2016 WL 6661336, at *12 (D.N.J. Nov. 10, 2016) (quoting *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-cv-374 (JAP), 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008)).

Providing settlement class members with a certain result now weighs in favor of settlement. *See In re Ocean Power Techs., Inc.*, Nos. 14-cv-3799, 14-cv-3815, 14-cv-4592 (FLW), 2016 WL 6778218, at *13 (D.N.J. Nov. 15, 2016) (reasoning that even if the class received a larger judgment following trial, "the additional delay, through summary judgment, trial, post-trial motions, and the appellate process, would deny the [c]lass any recovery for years," and "secures a substantial and certain benefit for the class in [a] highly complex and contested action, undiminished by further expenses, and without the delay, risk, and uncertainty of continued litigation."); *Hacker v. Elec. Last Mile Sols., Inc.*, 722 F. Supp. 3d 480, 499 (D.N.J. 2024) (finding this factor weighed in favor of preliminary approval because securities class actions "are plainly expensive and complex.").

This matter has already proceeded for over three years and there have been several motions including dispositive motions. Defendants have steadfastly maintained that they have not violated any laws and were prepared to mount a vigorous defense, as demonstrated by the past three years

of litigation. If this case were to continue, Plaintiff and the class members would face additional dispositive motions and a challenged motion for class certification. If the claims were not disposed at any of these junctures in the litigation, trial would be lengthy, and the outcome is never guaranteed. Then, there would be the inevitable appeals, further prolonging the action. It could be years before Plaintiff, and therefore the class, received any recovery. Providing settlement class members with a certain result now weighs in favor of preliminary approval. The Court therefore finds that the first *Girsh* factor is met.

### 2. The Reaction of the Class to the Settlement (Factor #2)

At this preliminary approval stage, it is impossible to know the reaction of the class to the settlement. The class representative supports the settlement. Class members will receive notice and will be afforded the opportunity to object or opt out. This factor is, at best, neutral.

### 3. The Stage of the Proceedings and the Amount of Discovery to be Completed (Factor #3)

"This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-cv-905, 09-cv-1248, 09-cv-4587 (MF), 2011 WL 1344745, at *12 (D.N.J. Apr. 8, 2011). Here, this litigation has been ongoing for three years and class counsel has done a significant amount of work to develop the claims. Although no formal discovery was exchanged, the parties engaged in substantial informal settlement discovery and confirmatory discovery. Defendants provided a list of all transactions during the applicable class period. This required a detailed analysis as to which parties should be members of the class. The parties also engaged in extensive motion practice including a dispositive motion for judgment on the pleadings. Courts have found this factor to be satisfied under similar circumstances. *See Saini v. BMW of N. Am., LLC*, No. 12-cv-6105 (CCC), 2015 WL 2448846, at *10 (D.N.J. May 21, 2015) (finding the third *Girsh* factor met when the case had been litigated for two years, the parties

had engaged in motion-to-dismiss briefing, and a settlement was reached through mediation). Accordingly, it is apparent that counsel fully appreciated the merits and liabilities of the case prior to entering into settlement and this factor weighs in favor of preliminary approval.

### 4. The Risks of Establishing Liability and Damages (Factors #4 and #5)

"Courts commonly analyze the fourth and fifth *Girsh* factors together." *Beltran*, 2023 WL 319895, at *5 (internal citations omitted). These factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). This inquiry "requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (quoting *In re Prudential Ins. Co.*, 148 F.3d at 319).

While Plaintiff is confident of the claims in this matter, he recognizes that litigation is not without risk. Plaintiff's consumer fraud claim was already dismissed by the Court. (ECF No. 61). Plaintiff acknowledges that there is a risk that other claims could be dismissed in future motion practice. (*Id.*). Further, Defendants continue to deny liability. (Settlement Agreement ¶¶ 9, 28). In litigation, nothing is ever certain. The settlement eliminates this risk and avoids further delay. Additionally, class members are receiving nearly full relief as they would if they were to prevail. Therefore, this factor weighs in favor of preliminary approval.

### 5. The Risks of Maintaining the Class Action Through Trial (Factor #6)

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537. As stated in *In re Gen. Motors*:

> The value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate

> proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.

55 F.3d at 817. The Third Circuit has acknowledged this exercise is somewhat "perfunctory" because district courts retain the discretion to decertify or modify a class that becomes unmanageable. *In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d. 491, 506 (W.D. Pa. 2003). Although Plaintiff remains confident that the class would be certified, he recognizes the risks in maintaining a class through trial and the potential for a class to be decertified. Further, if this matter did not settle, Defendants would likely challenge certification. There are inherent risks to maintaining a class throughout trial. *In re Par Pharm. Secs. Litig.*, No. 06-cv-3226 (ES), 2013 WL 3930091, at *7 (D.N.J. July 29, 2013). Accordingly, this factor weighs in favor of settlement.

### 6. The Ability of Defendants to Withstand a Greater Judgment (Factor #7)

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp.*, 264 F.3d 201, 240 (3d Cir. 2001). There has been no information presented as to whether Defendants could withstand a larger judgment. Accordingly, this factor is neutral.

### 7. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and all the Attendant Risks of Litigation (Factors #8 and #9)

The final two factors evaluate if the settlement is "a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538 (citing *In re Prudential Ins. Co.*, 148 F.3d at 322). These "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* "In order to assess the reasonableness of a proposed settlement seeking monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" *In re*

*Prudential Ins. Co.*, 148 F. 3d at 322 (quoting *In re General Motors*, 55 F. 3d at 806 (quoting Manual for Complex Litigation 2d § 30.44, at 252)).

The settlement provided for here is significant in light of the class's potential best recovery should the class ultimately prevail at trial. Here, each class member will receive approximately $90.94 in all cash relief. Courts have regularly approved settlements under TCCWNA awarding class members $100 in combined cash and non-cash relief. *See, e.g., Kendall v. CubeSmart L.P.*, No. 3:15-cv-6098 (BRM) (LHG), 2018 WL 11355028, at *2 (D.N.J. Apr. 19, 2018) (awarding $35.00 cash and $65.00 certificate per class member); *Gomes v. Extra Space Storage, Inc.*, No. 2:13-cv-929 (KSH) (CLW), 2017 WL 2999020, at *1 (D.N.J. July 13, 2017) (awarding $25 cash and $75 certificate per class member). Furthermore, "[c]ourts regularly apply a penalty of $100 per contract when determining TCCWNA liability." *Bovgirya v. Am. Honda Motor Co., Inc.*, No. 2:17-cv-06248 (WHW) (CLW), 2018 WL 3954855, at *5 (D.N.J. Aug. 16, 2018). An award of $90.94 in cash where courts regularly apply a penalty of $100 is a substantial outcome under TCCWNA, and represents an almost complete recovery for the class members. It is more favorable for class members to receive $90.94 in cash now, compared to continuing toward trial and risking losing everything to only potentially gain less than $10. Accordingly, this factor weighs in favor of preliminary approval.

## C.  The *Prudential* Considerations

Since *Girsh*, the Third Circuit has held that, because of the "sea-change in the nature of class actions," it may be helpful to expand the *Girsh* factors to include permissive and non-exhaustive factors, including:

> [1] [T]he maturity of the underlying substantive issues . . . ; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results

> achieved — or likely to be achieved — for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Pet Food Prods.*, 629 F.3d at 350 (quoting *In re Prudential Ins. Co.*, 148 F.3d at 323). *See In re Baby Prods.*, 708 F.3d at 174 ("Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive, 'illustrat[ing] . . . [the] additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms.'") (internal citations omitted). "The Court does not have to perform analysis on each *Prudential* factor – rather it must address the factors that are relevant to the particular case at hand." *Castro v. Sanofi Pasteur, Inc.*, No. 11-cv-7178 (MCA), 2017 WL 4776626, at *6 (D.N.J. Oct. 23, 2017). There are three factors relevant to the Court's current analysis – whether class members are afforded the right to opt out, the reasonableness of the proposed attorneys' fees award, and the whether the procedure for processing claims is fair and reasonable.

First, the Settlement Agreement provides class members with the right to opt-out if they so choose. (Settlement Agreement ¶¶ 1, 24; Merino Decl. Ex. B "Long Form Notice"). Second, the proposed attorneys' fees and costs are $170,000, plus $12,500 for the class representative and $7,500 as a fee to CEG to administer the settlement. (Settlement Agreement ¶ 10, 11; Amendment to the Settlement Agreement ¶ 1). The attorneys' fees are the results of the parties' months-long arm's length negotiations. (Merino Decl. ¶ 6). Negotiations over the amount of attorneys' fees took place only after executing the comprehensive settlement agreement and agreeing on the form of class notice. (*Id.* ¶ 8). Following the agreement on attorneys' fees, the parties amended the settlement agreement to reflect the same. (*Id.*). Further, class counsel put over three years of work

21

into this matter including, among other things, drafting pleadings, investigatory work, responding to a motion to remand and a dispositive motion for judgment on the pleadings, discovery, settlement negotiations, and drafting of the settlement documents. Given the extensive amount of work, the proposed fee amount does not appear unreasonable.

Importantly, the payment to class counsel for attorneys' fees will not reduce the benefits for the settlement class. (*Id.* ¶ 9). In the District of New Jersey, "[C]ourts routinely approve agreed-upon attorney's fees when the amount is independent from the class recovery and does not diminish the benefit to the class." *Oliver v. BMW of N. Am., LLC*, No. 17-cv-12979 (CCC), 2021 WL 870662, at *10 (D.N.J. Mar. 8, 2021). The fact that the attorneys' fees and costs are not be funded out of the settlement monies weighs in favor of settlement. At this preliminary stage, the Court finds the proposed fees and costs to be reasonable. The reasonableness of the requested attorneys' fee award and costs will be further scrutinized at the final fairness hearing, where the Court will have before it a Motion for Final Approval of the Class Action Settlement and a Motion for Attorneys' Fees and Costs. Accordingly, the Court finds the proposed fees to be reasonable at this time.

Finally, the procedure for processing individual claims is fair and reasonable because the Class Counsel with the consent of Defendants' counsel has selected CEG, an experienced claims administrator, to serve as the settlement administrator. CEG's qualifications will be discussed further below.

### D.  The Proposed Notice Plan

Finally, the Court will turn to the proposed notice plan. The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Easterday*, 2023 WL 4398491, at *5 (quoting Fed. R. Civ. P. 23(e)(1)). Class notice is subject to due process

requirements and must comply with the method and content guidelines in Fed. R. Civ. P. 23(c)(2) and 23(e)(1). *Id.* In a Rule 23(b)(3) class action, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). When the settlement notice is sent simultaneously with the notice, the notice must inform the class that the settlement agreement is not a "fait accompli" and that class members can be heard, object to the settlement, and opt out. *Easterday*, 2023 WL 4398491, at *5 (citing *In re Gen. Motors*, 55 F.3d at 789). The notices must "clearly and concisely state in plain, easily understood language":

1. the nature of the action;
2. the definition of the class certified;
3. the class claims, issues, or defenses;
4. that a class member may enter an appearance through an attorney if the member so desires;
5. that the court will exclude from the class any member who requests exclusion;
6. the time and manner for requesting exclusion; and
7. the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Due process requires notification to the class "(1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the Fairness Hearing." *Easterday*, 2023 WL 4398491, at *6 (quoting *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997)). The notice must "describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *Id.* at *6 (quoting *In re Diet Drugs*, 369 F.3d 293, 308-10 (3d Cir. 2004)).

The Settlement Agreement sets forth a detailed mechanism by which class members will be identified and their contact information obtained. (Settlement Agreement ¶ 12). Here, notice to

the class will consist of Long Form Notice sent by regular mail. (*Id.* ¶ 13). Class members will be identified by Defendants using purchase history information that includes addresses for the class members. (*Id.*). Defendants represented at oral argument that the data taken at the point of sale did not include email addresses, so notification by email would not be possible. CEG will track responses and provide a certification to the Court at the time of final approval of the success rate, and any class members who elect to opt out.

The Court finds that Long Form Notice attached to the moving papers is sufficient.[3] (Long Form Notice). It explains the nature of the action and Defendants' alleged violations of the Furniture Delivery Regulations and TCCWNA in their furniture sales practice. (*Id.* at 3). It describes that the settlement class is comprised of the first named purchaser in the 1,379 transactions identified by Defendants who purchased household furniture for future delivery to an address in New Jersey from November 14, 2015 through February 11, 2022 where the furniture delivery date was changed at no fault to the consumer. (*Id.*). It notifies class members that they can hire their own attorney if they wish. (*Id.* at 4). It states class members can exclude themselves from the settlement, sets forth how they can opt-out, and explains the ramifications of doing so. (*Id.* at 5-6). It will set forth a due date to request exclusion. (*Id.* at 6). The notice also advises class members that they can object to the settlement even if they do not opt out, and explains how to properly submit an objection. (*Id.*). Finally, it notifies class members that if they do not opt out of the class, they are giving up the right to independently sue Defendants for the claims covered by this lawsuit. (*Id.* at 5). The Notice also explains the general terms of the settlement – namely, the

---

[3] The Court directs Plaintiff to correct one error in the Long Form Notice prior to mailing. Plaintiff represented to this Court that the amount received by the class members would be $90.94, but the Long Form Notice states that class members will receive $89.00. Accordingly, the long form notice should be edited to reflect the correct amount of $90.94 that was represented to this Court.

payment class members will receive if they do not opt-out of the settlement. The Court finds that that the Long Form Notice sufficiently apprises class members of their rights.

Plaintiff requests that the Court appoint CEG as settlement administrator. (Settlement Agreement ¶ 11). CEG has been previously appointed as a settlement administrator in this Circuit and others. *See Williams v. Pisa Grp., Inc.*, No. 18-cv-4752, 2025 WL 354695, at *1 (E.D. Pa. Jan. 30, 2025) (appointing CEG as the class administrator); *Leslie Ann Wilkie Peltier, et al. v. Deb Haaland, et al.*, No. 20-cv-03775 (D.D.C. February 16, 2021) (ECF No. 21 ¶ 8) (appointing CEG as the settlement administrator). The Court is satisfied with the role CEG will serve in the instant case. CEG has agreed to accept $7,500 as a flat fee to administer this settlement, which shall be paid from the $137,900 fund. (Settlement Agreement ¶ 11). This fee does not include the cost of the CAFA Notice. (Merino Decl. ¶ 26). Defendants will be separately responsible for the delivery of the CAFA Notice and any associated costs. (*Id*.). The $7,500 fee will cover all work to be performed by CEG, including mailing out the notice, following up for any notices that are returned as undeliverable, handling opt-outs, objections and questions, sending out checks, and a variety of additional tasks set forth in the Settlement Agreement. The Court finds that CEG is qualified to serve as the class administrator, and that CEG's fee is reasonable under the circumstances.

CEG will establish the Settlement Fund within seven days of the effective date. (Settlement Agreement ¶ 6). The bank from which the Settlement Fund will be administered must have a minimum of 20 branches located within the state of New Jersey. (*Id*.). The settlement checks shall expire 125 days after the date each check is mailed to a settlement class member. (*Id.* ¶ 8). The expiration date shall be clearly identified on the face of each check. (*Id.*). Defendants shall have no obligation with respect to expired checks, it being understood and agreed that expired checks are deemed null and void if not cashed within 125 days of the date they are mailed to class member.

25

(*Id.*). However, if a check is re-mailed to any settlement class member the limitations in the preceding sentence shall apply from the date of re-mailing, unless there are less than 45 days remaining until the initial expiration date, in which case the reissued check shall have an expiration date of 45 days from the date it is mailed. (*Id.*).

If any settlement check is not deliverable to a member of the Settlement Class or a check is not cashed prior to its expiration date, leaving a balance in the Settlement Fund, a *cy pres* award for the total balance in the Settlement Fund shall be paid to LSNJ. (*Id.*). The *cy pres* award will be issued by the Settlement Administrator within 21 days after the check expiration date of the last remaining un-cashed check. (*Id.*).

The parties submitted the below proposed notice schedule, which was modified by the Court with the consent of the parties at oral argument as represented by the strike-throughs and is reflected in the corresponding order:

| 1 | Initial Notice Date | No more than 14 days after the entry Preliminary Approval Order |
| 2 | Deadline for Filing Requests for Exclusion | ~~35~~ 60 days after the Notice Date |
| 3 | Deadline for Filing Objections | ~~35~~ 60 days after the Notice Date |
| 4 | Fairness Hearing | ~~No earlier than 110 days after entry of the Preliminary Approval Order, to allow time for the CAFA notice process.~~ File Motion for Final Approval and Attorneys' Fees by March 6, 2026. Fairness Hearing has been scheduled for April 13, 2026 at 10:00 a.m. |

The Court is therefore satisfied with the Proposed Notice Plan, finding that it satisfied due process and attempts to reach as many class members as possible. Accordingly, the Court hereby appoints CEG as the settlement administrator in the instant case. Finally, the Court approves the proposed schedule amended as set forth herein, finding it allows enough time for CEG to send

notices to the class and process claims forms, and for class members to opt-out and submit their objections.

## **CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED**. An accompanying Order follows.

_/s/ Stacey D. Adams_
Hon. Stacey D. Adams
United States Magistrate Judge